

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| HAZEL ERBY, | ) | No. ED112783 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | Cause No. 20SL-CC05287 |
| | ) | |
| ST. LOUIS COUNTY, | ) | Honorable Ellen H. Ribaudo |
| | ) | |
| Respondent. | ) | FILED: February 11, 2025 |

### Opinion

Hazel Erby (Erby) by and through her husband, Louis Erby, the Personal Representative of her estate, appeals from the circuit court's grant of St. Louis County's (County) Motion to Dismiss Erby's First Amended Petition (Amended Petition) filed after her death. The Amended Petition alleged violations of the Missouri Human Rights Act[1] (MHRA) and protections for public-entity whistleblowers under § 105.055, RSMo (Cum. Supp. 2018), the Public Employee Whistleblower Statute (PEWS).[2] The circuit court determined Erby's claims abated upon her death, finding the claims were not "personal injuries" preserved under the survivorship statute § 537.020.[3] Because we find that claims of retaliation and discrimination under the MHRA and PEWS are injuries to the "rights" or "body" of Erby, and thus personal injuries, such claims do

---

[1] *See* §§ 213.010–.137, RSMo (2016) as updated through RSMo (Cum. Supp. 2018).

[2] This section, which we are referring to as Public Employee Whistleblower Statute, mirrors the Whistleblower's Protection Act for non-public entities in § 285.575, RSMo (Cum. Supp. 2018).

[3] Unless otherwise stated, all statutory references are to RSMo (2016).

not abate upon her death but instead survive under § 537.020. Therefore, the circuit court erred in granting dismissal on the basis that Erby's claims abated. We grant the appeal and reverse the circuit court's judgment. We remand the cause for further proceedings consistent with this opinion.

Background

On October 16, 2020, Erby filed a petition alleging discrimination and whistleblower claims against the County and its County Executive. Erby subsequently died. On August 18, 2021, shortly after her death, Erby's husband, as Personal Representative of her estate, sought leave to amend Erby's original petition and filed a substitution of parties accompanied by the Notice of Letters Testamentary documenting his appointment as Personal Representative. The motions were granted over the County's objection.

The Amended Petition filed against the County and its County Executive alleged multiple claims of discrimination and retaliation under the MHRA and PEWS. To support her claim, the Amended Petition alleged the following facts: Erby was an African-American woman employed as the Director of the County's Office of Diversity, Equity, and Inclusion (DEI), having served previously as a County Councilwoman. Her role as the Director of DEI included ensuring the County's compliance with the Minority and Women-Owned Business Enterprise Program (MWBE), which, by county ordinance, requires the County to use a specific percentage of minority and women-owned contractors for county projects. Erby alleged that her office was underfunded and that the County accepted bids and worked with contractors who did not comply with the MWBE's requirements. Erby voiced her concerns about these issues to the County Executive, who is a Caucasian man. Erby alleged that the County continued flouting the requirements of the MWBE, particularly while building a temporary morgue during the COVID-19 pandemic. Erby alleged that she again brought these concerns to the County Executive, who

2

indicated he would not "deal with that" and also commented that MWBE legislation was "flawed" and "no good." Subsequently, on August 18, 2020, the County Executive terminated Erby's employment. Erby alleged that, at the time of her termination, the County Executive told her that he "didn't see a path forward for [her]" and "didn't need [her] on his staff anymore." Erby specifically alleged that the County Executive told her that, given her "situation," he felt the job was "too stressful" for her. Erby alleged the "situation" the County Executive was referring to was her cancer diagnosis, which he had been previously made aware of in 2018. Erby also alleged that, despite her illness, she was able to work and perform her duties first as County Councilwoman and later as DEI Director.

On February 6, 2023, the County moved to dismiss Erby's Amended Petition, arguing that the MHRA and PEWS claims were not tort claims and therefore abated at Erby's death. Additionally, in its motion, the County alleged that Erby's Amended Petition should be dismissed pursuant to Rule 55.27[4] for failure to state a claim upon which relief can be granted. The circuit court ultimately granted the County's Motion to Dismiss solely on the grounds that Erby's claims did not qualify as "personal injuries" under § 537.020 and thus abated upon her death. The circuit court expressly declined to rule on the other claims in the County's Motion to Dismiss. Erby now appeals.

### Standard of Review

"We review the grant of a motion to dismiss *de novo*[.]" *Yount v. Keller Motors, Inc.*, 639 S.W.3d 458, 462 (Mo. App. E.D. 2021) (internal citation omitted). Where the legal basis for dismissal presents a question of statutory interpretation, we apply *de novo* review. *Li Lin v. Ellis*, 594 S.W.3d 238, 241 (Mo. banc 2020) (internal citation omitted).

---

[4] All Rule references are to Missouri Rules of Civil Procedure (2024) unless otherwise stated.

A motion to dismiss for failure to state a claim under Rule 55.27(a)(6) is solely a test of the petition's adequacy. *Gill v. City of St. Peters*, 641 S.W.3d 733, 737 (Mo. App. E.D. 2022); *see* Rule 55.27(a)(6). On appeal from grant of a motion to dismiss for failure to state claim, we "review the petition to see if the facts alleged, given their broadest intendment, meet the elements of a cause of action that is recognized or that might be adopted." *Yount*, 639 S.W.3d at 462–63 (quoting *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 789 (Mo. banc 2016)). We review facts alleged in the petition as true and in the light most favorable to the plaintiff. *Id.* (internal citation omitted).

A plaintiff's petition is adequate if the petition and the exhibits attached allege any set of facts that, if proven, would entitle the plaintiff to relief. *CIBC Bank USA v. Williams*, 669 S.W.3d 298, 304 (Mo. App. E.D. 2023). "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion." Rule 55.12. An exhibit to a pleading is a part thereof for all purposes." *Id.* We consider exhibits attached to the petition as part of the allegations when reviewing a circuit court's grant of a motion to dismiss. *CIBC Bank USA*, 669 S.W.3d at 303–4.

"When . . . the circuit court does not specify reasons for dismissing a petition, an appellate court presumes that the circuit court's judgment is based on one of the reasons stated in the motion to dismiss" and will thus affirm on any grounds raised in the motion. *Avery Contracting, LLC v. Niehaus*, 492 S.W.3d 159, 162 (Mo. banc 2016) (internal citation omitted); *see also Rice v. Midland States Bank*, 692 S.W.3d 76, 78 (Mo. App. E.D. 2024) (internal citation omitted). Here, however, the circuit court specified its reason for dismissing the Amended Petition and declined to opine as to the other reasons raised in the County's motion. Therefore, we review the abatement issue argued and decided in the circuit court, and we decline to take up

4

the County's alternative arguments on this appeal, which the County is free to raise before the circuit court on remand in subsequent proceedings.

Discussion

**I.** **Points One and Two—MHRA and PEWS Claims are Injuries to the "Rights" or "Body" of a Person and Do Not Abate Upon the Death of the Claimant Pursuant to § 537.020.**

In its Motion to Dismiss, the County claimed Erby's claims abated upon her death because neither claims under the MHRA or the PEWS could be classified as personal injuries under *Gray v. Wallace*, 319. S.W.2d 582 (Mo. 1958). The circuit court adopted the County's reasoning, stating in its judgment dismissing the Amended Petition that *Gray* did not apply to MHRA or PEWS claims and thus Erby's claims were not personal injury claims subject to survival. We disagree. *Gray* explicitly defines personal injuries as injuries to an individual's "rights" or "body." *Id.* at 584. *Gray* holds that personal injuries are not specifically excepted from the survivorship statutes, §§ 537.020 and 537.030, and thus avoid abatement upon the death of the original plaintiff. *Id. Gray*'s holding remains controlling Missouri law. Claims of discrimination and retaliation squarely fit within *Gray*'s definition, therefore both categories of tort claims do not abate, and the circuit court erred in dismissing the Amended Petition on that basis.

A. <u>Survivorship of Personal Injury Causes of Action under § 537.020</u>

The primary statute at issue before us is the survivorship statute under which personal injury causes of action survive the death of the plaintiff rather than abating as provided by common law. § 537.020; *see Breeden v. Hueser*, 273 S.W.3d 1, 11 (Mo. App. W.D. 2008) (explaining that, at common law, actions based in tort abated at the death of either the person wronged or the wrongdoer). Specifically, the statute states:

5

1. Causes of action for personal injuries, other than those resulting in death, whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death, nor by reason of the death of the person against whom such cause of action shall have accrued; but in case of the death of either or both such parties, such cause of action shall survive to the personal representative of such injured party, and against the person, receiver or corporation liable for such injuries and his legal representatives, and the liability and the measure of damages shall be the same as if such death or deaths had not occurred. Causes of action for death shall not abate by reason of the death of any party to any such cause of action, but shall survive to the personal representative of such party bringing such cause of action and against the person, receiver or corporation liable for such death and his or its legal representatives.

2. The right of action for death or the right of action for personal injury that does not result in the death shall be sufficient to authorize and to require the appointment of a personal representative by the probate division of the circuit court upon the written application therefor by one or more of the beneficiaries of the deceased. The existence of the right of action for death or personal injury that does not result in death shall be sufficient to authorize and to require the appointment of a personal representative for the person liable for such death or injury by the court having probate jurisdiction upon his death upon the written application of any person interested in such right of action for death or injury.

Missouri has a similar survival statute for "[a]ctions for wrongs done to property or interests therein[.]" § 537.010. Missouri specifically excepts from these survivorship statutes actions for "slander, libel, assault and battery or false imprisonment." § 537.030. The question presented here is whether Erby's causes of action, brought under the MHRA and PEWS, were personal injury actions that survived her death. *See* § 537.020, .030.[5]

Because the question presented requires statutory interpretation, we adhere to the following canons. "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Id.* at 242 (quoting *Howard v. City of Kansas City*, 332 S.W.3d 772, 779 (Mo. banc 2011)). "This Court will not add words to a statute under the auspice of statutory construction." *Id.* (quoting *Macon Cnty. Emergency Servs. Bd. v.*

---

[5] Neither party suggests to this Court that Erby's causes of actions survive as property claims under § 537.010.

*Macon Cnty. Comm'n*, 485 S.W.3d 353, 355 (Mo. banc 2016)). Additionally, "our common law system has developed on the assumption legal precedents must be followed[,]" as judicial precedent prevents "the arbitrary interpretation and application of the law," and departure is only warranted when "contrary to reason," "flatly absurd," or "unjust." *Lucas v. Ashcroft*, 688 S.W.3d 204, 213 (Mo. banc 2024) (internal citations omitted).

The Supreme Court of Missouri defined "personal injury" for purposes of survivorship in *Gray*, which remains the controlling precedent. Applying the canons of statutory interpretation, the Supreme Court analyzed whether a claim of malicious prosecution seeking monetary relief in the form of actual and punitive damages abated at the death of original plaintiff, or whether, under §§ 537.020 and 537.030, the claim survived the death of original plaintiff. *Id.* at 583 (citing §§ 535.020, .030, RSMo (1949)).[6],[7] As a matter of statutory interpretation, the Supreme Court found §§ 537.020 and 537.030 must be read in concert with one another as intended by the legislature. *Id.* at 584. The Supreme Court reasoned that because the legislature enumerated specific excepted causes of action that do not survive, and those exceptions do not include malicious prosecution, a claim for malicious prosecution must survive a plaintiff's death. *Id.* The Supreme Court explained that the meaning of personal injury for survivorship must be

---

[6] None of the relevant language at issue in §§ 537.020 or 537.030 has been amended since *Gray*.

[7] To the extent that the circuit court applied the definition of "personal injury" from §§ 537.1000–.1035, RSMo (Cum. Supp. 2021), which applied strictly to claims relating to exposure and injury due to Covid-19, such application was erroneous as a matter of law. As referenced *sua sponte* in the circuit court's judgment, § 537.1000(14) defines personal injury as an "actual or physical injury to an individual or death caused by a physical injury and includes mental suffering, emotional distress, or similar injuries suffered by an individual in connection with a physical injury[.]" However, Erby brought her claims under the MHRA and PEWS and brought no claims relating to Covid-19 exposure or injury. Section 537.1035 explicitly provides that the Covid-19 statutory scheme is self-contained and does not serve to expand any liability otherwise imposed or limit any defense otherwise available, meaning that the stringent definition of personal injury in § 537.1000(14) applies only to §§ 537.1000–.1035. Furthermore, § 537.1035 has a sunset clause, ending four years after August 21, 2021. Given this statutory language, we are not persuaded it is legally sound nor logical to expand the application of a statute, specifically enacted to address an unprecedented global event, to other permanent statutory schemes or existing caselaw like *Gray*. To allow § 537.1000(14) to define personal injuries beyond its dates of effectiveness would create an inconsistency that could not sustain any sort of judicial scrutiny.

broadly construed as including both personal wrongs and bodily injury, noting "[i]t must follow that the legislature intended that the term 'personal injuries' was to include all actions for injuries to the person whether to the person's **rights or to his body**." *Id.* (emphasis added). The Supreme Court further elaborated that "the legislature did not include as exceptions to 'personal injury' actions which were not to abate by reason of § 537.030, actions for malicious prosecution, criminal conversation, seduction, and perhaps others which are actions to recover for injuries to personal rights as distinguished from injuries to the person as such." *Id.*

Following *Gray*, Missouri courts have extended the Supreme Court's broad interpretation of the survivorship statute § 537.020 to various other causes of action not specifically excluded by § 537.030. For example, this Court found that claims for legal malpractice and breach of fiduciary duty survive a plaintiff's death. *Roedder v. Callis*, 375 S.W.3d 824, 827 (Mo. App. E.D. 2012). Later applying *Roedder* and *Gray* to the survival of another legal malpractice claim, this Court reiterated that Missouri law favors construing "personal injury" for purposes of survivorship in "its broadest and most comprehensive sense." *Ruiz v. Bar Plan Mut. Ins. Comp.*, 590 S.W.3d 333, 344–45 (Mo. App. E.D. 2019) (citing *Gray*, 319 S.W.3d at 584; *Roedder*, 375 S.W.3d at 827). This Court recognized that *Gray* interpreted the survivorship statutes as permitting the survival of a wide range of tort actions so long as there is an injury to a person's clearly established rights. *Id.* (*Roedder*, 375 S.W.3d at 827 (citing *Gray*, 319 S.W.3d at 584)).

Additionally, Missouri courts have found that statutory claims, such as claims brought under the Missouri Merchandising Practices Act (MMPA), may survive a plaintiff's death. *Breeden*, 273 S.W.3d at 12 (applying the property-claim survival statute § 537.010—rather than the personal injury survival statute § 537.020—to an MMPA claim for economic damages due to deceptive billing practices). As in the previously discussed cases, *Breeden* noted that MMPA

8

claims were not specifically exempted by statute. *Id.* at 13. Relevant to applying the survival statutes to the claims in this appeal, *Breeden* stated that "survival depends primarily on the **substance** of the action and not the ***form of the proceeding*** brought to enforce it." *Id.* at 14 (internal citation omitted) (emphases added). After finding a fraud claim survives as a wrong done to property rights under § 537.010, *Breeden* determined the substance of an MMPA claim for a deceptive business practice is the recovery of a monetary loss incurred due to a fraud, and thus the claim likewise survives. *Id.*

B.      Point One—MHRA Claims Survive Under § 537.020

We first address Erby's MHRA claims of disability and race discrimination as well as retaliation. We subsequently address Erby's PEWS claim. As the parties note, no Missouri authority definitively classifies an MHRA claim as a personal injury, and whether MHRA claims survive a plaintiff's death is a matter of first impression. We find in light of the statutory guidance provided by the Supreme Court in *Gray* that discrimination and retaliation based on a protected MHRA category, or a prohibited retaliatory action under the MHRA, constitutes an injury to a person's "***rights or . . . body***" contemplated by § 537.020 and not excepted by § 537.030 and thus survives a plaintiff's death. *See Gray*, 319 S.W.2d at 584.

In order to determine whether Erby's MHRA claims were personal injury claims that survived her death under § 527.020, we must first identify the substance of MHRA claims, the harms alleged, and the relief afforded to successful litigants. *See Breeden*, 273 S.W.3d at 14 (noting whether a claim survives depends on the substance of the action).

The MHRA prohibits an employer from discriminating or retaliating against an employee on the basis of "race, color, religion, national origin, sex, ancestry, age or disability of any individual." §§ 213.055(1), .070(2) RSMo (Cum. Supp. 2018). In order to bring an MHRA claim, the plaintiff must belong to one of those statutorily-defined protected categories. *See* §§

9

213.055(1), RSMo (Cum. Supp. 2018). The MHRA holds employers liable for taking an adverse employment action against an employee belonging to one of those protected categories where the protected category was the "motivating factor" of the adverse action. § 213.055(1), .010(19), RSMo (Cum. Supp. 2018). In addition, the MHRA also prohibits employers from retaliating against an employee for filing a charge of discrimination or otherwise opposing discrimination. § 213.070, RSMo (Cum. Supp. 2018). Under the MHRA, a plaintiff is entitled to relief through an injunction, a restraining order, actual and punitive damages, and attorneys' fees. §§ 213.111.2, .111.4, RSMo (Cum. Supp. 2018).

MHRA claims sound in tort law and involve wrongs to a person. *Bowolak v. Mercy East Cmtys*, 452 S.W.3d 688, 704 (Mo. App. E.D. 2014) (affirming an award of post-judgment interest for an MHRA claim at the tort-claim rate). The very title of the Act emphasizes the "human rights" protected therein. The "MHRA 'recognizes the public purpose served by the litigation that vindicates the rights of those who are discriminated against.'" *Alhalabi v. Missouri Dept. of Corr.*, 662 S.W.3d 180, 195 (Mo. App. W.D. 2023) (quoting *Gililand v. Mo. Athletic Club*, 273 S.W.3d 516, 523 (Mo. banc 2009) (finding attorneys representing MHRA plaintiffs are entitled to attorneys' fees in part because public policy favors plaintiffs filing personal causes of action for alleged violations of their human rights rather than relying primarily on government agencies to enforce such rights)); *see also Wiedner v. Ferrellgas, Inc.*, 662 S.W.3d 842, 848 (Mo. App. W.D. 2023) (noting that awarding attorneys' fees in an MHRA action is intended to "make an MHRA plaintiff whole" through appropriate compensation)). "An action for damages under the [MHRA] seeks redress for an intentional wrong done to a person[.]" *State ex re. Diehl v. O'Malley*, 95 S.W.3d 82, 87 (Mo. banc 2003); *see Bowolak*, 452 S.W.3d at 704. The fact that an MHRA plaintiff may alternatively seek equitable or

administrative relief does not waive the plaintiff's constitutional right to a jury trial when bringing an MHRA action for civil damages. *Diehl*, 95 S.W.3d at 89. "Actual damages under the MHRA in an employment-discrimination claim may include awards for emotional distress, humiliation, and suffering." *Wilkins v. Board of Regents of Harris-Stowe State Univ.*, 519 S.W.3d 526, 538 (Mo. App. E.D. 2017) (internal citation omitted) (finding a plaintiff who alleged employment discrimination under the MHRA was entitled to have the jury instructed on future wage loss)).

Viewing Erby's MHRA claims in light of *Gray*'s interpretation of the survival statutes as well as the aforementioned MHRA caselaw, we find the substance of Erby's MHRA claims and their available remedies are sufficiently tort-like as to be claims of personal injury under § 537.020. *See Gray*, 319 S.W.2d at 584; *see also Bowolak*, 452 S.W.3d at 704; *Diehl*, 95 S.W.3d at 87. First, § 537.030 does not specifically exclude MHRA claims from survival, thus we presume the legislative intent is broadly inclusive. *See Gray*, 319. S.W.2d at 584. Further, an MHRA claim is reasonably construed as a wrong to the "rights" or "body" of Erby. *See id.* The MHRA provides a vehicle for recovery against discriminatory violations of human rights, i.e., personal rights, and offers various alternative forms of relief, including actual monetary damages. *See Diehl*, 95 S.W.3d at 87. Therefore, as *Gray* is controlling law, we must see and view the case at bar as a tort claim that does not abate under § 537.020. Accordingly, we find the circuit court erred in dismissing the First Amended Petition on the grounds that Erby's MHRA claims abated at her death. Point One is granted.

C.      Point Two—PEWS Claim Survives Under §§ 537.020 and 537.030

We next analyze whether Erby's PEWS claim survives and find it does. The PEWS prohibits retaliation by public employers against public employees for protected whistleblower activity. *See* § 105.055, RSMo (Cum. Supp. 2018). Specifically, the statute prohibits a public

11

employer from taking disciplinary action, dismissal or otherwise, against a public employee for the "disclosure of any alleged prohibited activity under investigation or any related activity, or for the disclosure of information" that the employee believes constitutes either (1) a violation of law, rule or regulation or (2) "[m]ismanagement, a gross waste of funds or abuse of authority, violation of policy, waste of public resources, alteration of technical findings or communication of scientific opinion, breaches of professional ethical canons, or a substantial and specific danger to public health or safety, if the disclosure is not specifically prohibited by law[.]" *Id.*

As it did in enacting the MHRA, the legislature adopted the PEWS (and the related statute for non-public entities) as a matter of public policy to allow plaintiffs to bring a personal cause of action for actual damages for disclosing illegal or otherwise improper conduct by the employer. The public policy purpose of the PEWS is indistinguishable from that of the MHRA, which is to provide protected employees recourse when their personal rights are infringed upon by an employer's adverse employment action and to encourage protected classes of employees to disclose prohibited conduct for the betterment of society.

The PEWS and MHRA can easily be described as analogous statutes with a common purpose. *See* Yount, 639 S.W.3d at 468–69 (interpreting the MWPA and MHRA). Both are tort claims that can be reasonably construed as wrongs to plaintiffs' "rights" or "bodies." *Gray*, 19 S.W.2d at 584. The type of claim is substantially similar, as are the means and types of recovery. *See* §§ 105.055.7(1), 213.111.2–.111.4, RSMo (Cum. Supp. 2018). Because the MHRA claims survive Erby's death, the PEWS claim must also survive. In addition to statutorily permissible compensatory and punitive damages, PEWS claims, like MHRA claims, are entitled to attorneys' fees. *See* § 105.055.7(1), RSMo (Cum. Supp. 2018); *Halderman v. City of Sturgeon*, 670 S.W.3d 193, 214 (Mo. App. W.D. 2023); *see also Alhalabi*, 662 S.W.3d at 195.

Because the legislative purpose of both statutes share a common purpose to protect employees from adverse action when reporting "unlawful acts or misconduct" of others, and the means of recovery are also closely related, we see no reason to treat a PEWS claim differently from MHRA claims in this case. §§ 105.055.7(1), 213.111.2–.4, RSMo (Cum. Supp. 2018); *see Yount*, 639 S.W.3d at 468–69. Therefore, the circuit court erred in dismissing Erby's PEWS claim on the basis that it did not survive her death. *See* § 537.020. We grant Point Two.

<u>Conclusion</u>

The judgment of the circuit court is reversed. We remand for the Amended Petition to be reinstated and for further proceedings consistent with this opinion.

_____

Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J., and
Thomas N. Chapman, Sp. J., concur.